**Michael BRISSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 97–67.

Supreme Court of Wyoming.

March 18, 1998.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Diane M. Lozano, Assistant Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and James Kaste, Student Intern for the Prosecution Assistance Program, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

The district court certified questions to the Wyoming Supreme Court pursuant to W.R.A.P. 11. The Wyoming Supreme Court agreed to answer the following certified questions:

1. Does a county court conviction, without benefit of counsel, for spousal battery expose the person so convicted to a "practical possibility" of incarceration?

2. If the answer to the first question is "yes," may such an uncounseled misdemeanor conviction be used to enhance the penalty for battery under Wyo. Stat. § 6–2–501(b) under circumstances wherein the defendant did not knowingly or intentionally waive counsel and, in fact, requested counsel?

## FACTS

Appellant Michael Brisson was charged with felony battery upon a household member pursuant to WYO. STAT. § 6–2–501(b) (1997) in January of 1997. Although Bris-

son's charge would have been a misdemeanor if it had been his first or second offense, it was elevated to a felony charge because he had been convicted of misdemeanor battery against a household member twice within ten years of his current charge. Brisson filed a motion to dismiss, claiming that his first battery conviction should not be used to elevate his current charge to a felony because it was obtained without him having the benefit of counsel even though he was indigent and had requested an attorney. The district court certified questions to this Court.

## DISCUSSION

The United States Supreme Court began its discussions on this issue in *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). In that case, the defendant was charged with an offense punishable by imprisonment for a maximum term of six months. 407 U.S. at 26, 92 S.Ct. at 2007. The defendant was unrepresented and was sentenced to serve ninety days in jail. *Id.* The Supreme Court held: "[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. at 37, 92 S.Ct. at 2012. The majority recognized that the assistance of counsel is often a requisite to the very existence of a fair trial. 407 U.S. at 31, 92 S.Ct. at 2009.

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he [may] have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it,

though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect."

*Id.* (quoting *Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)).

In an ensuing opinion, the Supreme Court clarified its *Argersinger* holding by stating: "[T]he central premise of *Argersinger*—that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." *Scott v. Illinois,* 440 U.S. 367, 373, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979). Uncounseled convictions which do not result in incarceration are considered to be valid convictions. *Id.*

The Supreme Court subsequently contemplated whether such an uncounseled conviction could be used to impose a prison sentence for a later conviction. *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). Although the plurality acknowledged that an uncounseled misdemeanor was valid if the defendant was not actually incarcerated, it held that such a conviction could not later be used to incarcerate a defendant on a subsequent offense because "a conviction which is invalid for purposes of imposing a sentence of imprisonment for the offense itself remains invalid for purposes of increasing a term of imprisonment for a subsequent conviction under a repeat-offender statute." *Id.* at 228, 100 S.Ct. at 1588 (Marshall, J., concurring).

*Baldasar* was overruled by *Nichols v. United States,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), in which the Supreme Court held that a prior uncounseled misdemeanor conviction could indeed be used as a basis for increasing a prison term under a recidivist statute. 511 U.S. at 747, 114 S.Ct. at 1927. The Supreme Court reasoned:

Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are commonplace in state criminal laws, do not

change the penalty imposed for the earlier conviction. As pointed out in the dissenting opinion in *Baldasar*, "[t]his Court consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant."

*Id.* (quoting *Baldasar*, 446 U.S. at 232, 100 S.Ct. at 1590). The Supreme Court, however, pointed out that states are free to provide their citizens greater protection than that given by the federal government. 511 U.S. at 748 n. 12, 114 S.Ct. at 1928 n. 12.

■ In deciding what Wyoming's approach to these issues should be, this Court must interpret the language of the relevant Wyoming statutes. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land and Cattle Company v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia. Id.* Courts determine as a matter of law whether a statute is clear or ambiguous. *Gunderson v. State*, 925 P.2d 1300, 1304 (Wyo.1996). When we determine that the statute is clear and unambiguous, we give effect to the plain language of the statute. *Id.*

■ Under WYO. STAT. § 7–6–104(a)(i) (1997), a public defender shall be appointed to represent a needy person who is under arrest for or charged with a "serious crime" and has requested counsel. A "serious crime" is defined as "any felony or misdemeanor under the laws of the state of Wyoming for which incarceration as a punishment is a practical possibility." [1] WYO. STAT. § 7–6–102(a)(v) (1997). The legislature has not defined the term "practical possibility." The task presented to this Court, therefore, is to determine what the legislature intended

when it used the term within this particular statute.

The word "practical" is defined by WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY as "available, usable, or valuable in practice or action: capable of being turned to use or account." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1780 (1961). "Possible" is defined by the same source as being something "that may or may not occur: that may chance: dependent on contingency: neither probable nor impossible." *Id.* at 1771. The word "possibility" means "something that is possible." *Id.* Giving the words "practical" and "possibility" their ordinary and obvious meaning according to their arrangement and connection within the statute, we conclude that this unambiguous term means something that is capable of occurring.

■ The Wyoming legislature apparently intended to afford Wyoming citizens greater protection in this area than that afforded by the United States Supreme Court. Section 7–6–104(a)(i) rejects the actual incarceration approach by requiring that an indigent person who is under arrest for or formally charged with a serious crime and who faces a practical possibility of being incarcerated must be provided the assistance of counsel. We, therefore, decline to follow the United States Supreme Court's actual incarceration approach. We also decline to follow the United States Supreme Court's holding that an uncounseled conviction can be used to enhance a subsequent offense. Our concern with allowing such a practice is with the reliability of uncounseled convictions. In order to allow a sentencing court to consider previous convictions, we must be convinced that such convictions are reliable. *See State v. Sinagoga*, 81 Hawai'i 421, 918 P.2d 228, 241 (Haw.Ct.App.1996). We hold that, in the absence of a valid waiver of counsel, an uncounseled conviction cannot be relied upon to impose or enhance a subsequent prison sentence.

■ In the case at bar, Brisson was charged with felony spousal battery under

---

**1.** We emphasize that our legislature did not make a distinction between misdemeanor cases and felony cases when it enacted this provision.

§ 6–2–501(b) and (f)(ii). Section 6–2–501 provides in relevant part:

> (b) A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another.
>
> . . . .
>
> (d) Except as provided by subsection (f) of this section, battery is a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both. Notwithstanding any other provision of law, the term of probation imposed by a judge under this subsection may exceed the maximum term of imprisonment established for the offense under this subsection provided the term of probation, together with any extension thereof, shall in no case exceed one (1) year.
>
> . . . .
>
> (f) A household member as defined by W.S. 35–21–102 who commits a second or subsequent battery against any other household member shall be punished as follows:
>
> . . .
>
> (ii) A person convicted of a third or subsequent offense under this subsection within ten (10) years following the first conviction is guilty of a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both.

Brisson admits that he was convicted twice within ten years. He claims, however, that, although he was indigent and requested an attorney for the June 1995 conviction, his request was denied. Brisson pleaded guilty and received probation. Even though Brisson was not sentenced to serve an incarceration term, the statute under which Brisson was convicted exposed him to a maximum incarceration term of six months. A prison term was, therefore, a practical possibility. We hold that Brisson should have been provided counsel for his first conviction and that his uncounseled conviction cannot be used to enhance his current charge to a felony.

Accordingly, we answer the question of whether a conviction for spousal battery exposes the accused to a "practical possibility" of incarceration which requires the assistance of counsel in the affirmative. We answer the question of whether an uncounseled misdemeanor may be used to enhance the penalty for a subsequent offense in the negative.