2002 WY 174

**Steven JOYNER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 01-87.**

Supreme Court of Wyoming.

Nov. 27, 2002.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Assistant Appellate Counsel; and Ryan R. Roden, Assistant Public Defender, Representing Appellant. Argument by Mr. Roden.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Faculty Director, Prosecution Assistance Program; and Tari L. Elam, Student Intern., Representing Appellee. Argument by Ms. Elam.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Steven Joyner (Joyner) appeals from a conviction of felony stalking in viola-

* Chief Justice at time of oral argument.

tion of Wyo. Stat. Ann. § 6–2–506 (LexisNexis 2001). Joyner pled guilty, but utilized W.R.Cr.P. 11(a)(2) to reserve his right to appeal the district court's denial of his Motion to Dismiss. Joyner contends that the criminal case should have been dismissed because the order of protection he was accused of violating was entered without affording him an adequate opportunity to appear and be heard. We reverse and remand.

## ISSUES

[¶ 2]   Joyner advances three issues on appeal:

I.   Did the trial court err in denying appellant's motion to dismiss?

II.   Was appellant denied his right to be present at a critical stage of the proceedings?

III.   Did the prosecutor commit prosecutorial misconduct when he knowingly prosecuted appellant for violation of an invalid order?

## FACTS

[¶ 3]   On March 30, 2000, Joyner went to the United Medical Center (UMC) in Cheyenne seeking adjustment to his epilepsy medication. For reasons not explained in the record, UMC detained Joyner, and proceedings were commenced for his involuntary hospitalization under Wyo. Stat. Ann. §§ 25–10–101 through 25–10–305 (LexisNexis 2001). UMC detained Joyner for five days, during which time he was not allowed to leave and had no access to mail or a telephone. UMC released Joyner on April 4, 2000, after a district court commissioner found that he was not mentally ill.

[¶ 4]   Joyner is divorced from Vickie Hitt (Hitt). On March 31, 2000, Hitt obtained from the Circuit Court of the Eighth Judicial District, Goshen County, in Torrington an *Ex Parte* Order of Protection against Joyner. This temporary order and a summons were served on Joyner, "personally and in person," at UMC on the same date. At the time of service, Joyner was in a room with a nurse and a guard. The deputy sheriff laid the papers on the table and told Joyner it was a summons for him to appear in court. Joyner read the first paragraph of the summons, which indicated the date, time, and location of a court hearing. The nurse then escorted Joyner from the room and told him not to worry, that the matter would be taken care of. Joyner did not know the papers contained an order of protection, and he was never given an opportunity to read the papers, but he did observe that the court hearing was set in Torrington.

[¶ 5]   On April 3, 2000, while Joyner was still at UMC, the Goshen County Circuit Court held the hearing noticed in the summons.[1] Joyner, of course, was unable to attend.[2] That same evening, while still at UMC, Joyner was served "personally and in person" with a copy of the Order of Protection issued as a result of that hearing. The nurse took the papers without giving Joyner a chance to read them.

[¶ 6]   After he was released from UMC, Joyner made no attempt to contact the Goshen County Circuit Court about the papers with which he had been served. Between May 1 and May 5, 2000, nearly a month after Joyner's release from UMC, Joyner engaged in a course of conduct that resulted in his being charged with stalking his ex-wife.

## STANDARD OF REVIEW

[¶ 7]   Joyner's claims of error in this case contain both issues of fact and of law. As we have stated numerous times, the district court's factual findings are reviewed under a clearly erroneous standard. However, constitutional issues are questions of law that we review de novo. *Taylor v. State,* 7 P.3d 15, 19 (Wyo.2000); *see also Pope v. State,* 2002 WY 9, ¶ 14, 38 P.3d 1069, ¶ 14 (Wyo.2002).

---

1.   The purpose of the hearing was to determine whether the *ex parte* order should be extended for the three months allowed by statute and to establish the terms of any order so extended. *See* Wyo. Stat. Ann. §§ 7–3–508 through 7–3–510 (LexisNexis 2001).

2.   The parties stipulated at the hearing on the Motion to Dismiss that the Goshen County Circuit Court Judge was aware during the April 3 hearing that Joyner was being involuntarily detained at UMC in Cheyenne.

## DISCUSSION

### Denial of the Motion to Dismiss

[¶ 8] Joyner based his motion to dismiss on a challenge to the validity of the Order of Protection given his inability to attend and be heard on the matter. Due process requires the State to "prove every element of a criminal offense beyond a reasonable doubt." *Krucheck v. State*, 671 P.2d 1222, 1224 (Wyo.1983) (*citing Sandstrom v. Montana*, 442 U.S. 510, 512, 99 S.Ct. 2450, 2453, 61 L.Ed.2d 39, 43 (1979)). The criminal offense charged here is stalking under Wyo. Stat. Ann. § 6–2–506 (LexisNexis 2001). Generally, stalking is a misdemeanor.[3] If, however, the offense is committed in violation of an order of protection, the offense becomes a felony punishable by up to ten years in prison.[4] Implicit in this version of felony stalking is the requirement that the order of protection be *valid* at the time of the alleged stalking. It is clear, following hearing, that the State cannot prove the order of protection was valid.

[¶ 9] Both the United States and Wyoming constitutions provide that no person may be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Wyo. Const. art. 1, § 6. To be constitutionally valid, the court issuing the order must have acted in a manner consistent with due process. Due process requires that the litigants be afforded both notice and a meaningful opportunity to be heard. *Murray v. Murray*, 894 P.2d 607, 608 (Wyo.1995) (*citing Sandstrom v. Sandstrom*, 880 P.2d 103, 106 (Wyo.1994)).

[¶ 10] As stated in the facts, Joyner was involuntarily detained in a psychiatric ward at UMC, apparently pursuant to Wyo. Stat. Ann. § 25–10–109 (LexisNexis 2001). UMC placed Joyner in a "lock down" facility from which he could not leave. UMC deprived Joyner access to a telephone and the mails. Importantly, at hearing, the prosecutor conceded that UMC acted as an arm of the State in detaining Joyner. While UMC detained Joyner, Joyner's ex-wife filed a petition in Goshen County Circuit Court requesting a Stalking Order of Protection, and the circuit court issued an *Ex Parte* Order of Protection. That same day, a Laramie County sheriff's officer served Joyner at UMC with the petition, the *Ex parte* Order of Protection, and a summons to appear for a hearing. Joyner was never given an opportunity to read the papers. On April 3, 2000, while Joyner was still in "lock down," the order of protection was entered. UMC discharged Joyner on April 4, 2000, pursuant to an order from a Laramie County District Court Commissioner.

[¶ 11] Although the circuit court, by virtue of service, had personal jurisdiction over Joyner at the time it entered the order of protection, that fact, by itself, does not resolve the question of whether Joyner was afforded due process of law. The evidence recited above establishes that the order of protection was entered without affording Joyner a meaningful opportunity to be heard thus depriving Joyner due process of law.

[¶ 12] We find persuasive the four cases trial counsel for Joyner cited to support his contention that he was not afforded a meaningful opportunity to be heard. A review of those cases reveals, generally, that incarcerated parties are not afforded due process when they are not permitted to participate in hearings. *RPM v. State, Dep't of Family Servs., Div. of Public Assistance & Social Servs.*, 917 P.2d 169, 170–71 (Wyo.1996); *Tageant v. Tageant*, 909 P.2d 322, 323 (Wyo. 1996); *Wolfe v. Wolfe*, 899 P.2d 46, 47–48

---

**3.** Wyo. Stat. Ann. § 6–2–506(b) states:
Unless otherwise provided by law, a person commits the crime of stalking if, with intent to harass another person, the person engages in a course of conduct reasonably likely to harass that person, including but not limited to any combination of the following....

**4.** Wyo. Stat. Ann. § 6–2–506(e) states:
A person convicted of stalking under subsection (b) of this section is guilty of felony stalking punishable by imprisonment for not more than ten (10) years, if:

\* \* \*

(iv) The defendant committed the offense of stalking in violation of a temporary or permanent order of protection issued pursuant to W.S. 7–3–508 or 509, or pursuant to a substantially similar law of another jurisdiction.

(Wyo.1995); and *Murray v. Murray*, 894 P.2d at 608. In those cases, the incarcerated party at least had an opportunity to make a request to participate. Here, Joyner did not have the opportunity to make such a request. The holdings in those cases apply with even greater force where it is clear that Joyner, as a result of state action, had no opportunity to even make a request to participate. On these facts, we conclude Joyner was deprived of due process of law, and the protection order was thus not valid at the time of the alleged stalking.

■ [¶ 13] In an argument made for the first time on appeal, the State contends that Joyner's attack on the validity of the order of protection issued by the Goshen County Circuit Court is a collateral attack upon the order. This court has consistently held that it "will not consider issues which are raised for the first time on appeal unless they are jurisdictional issues or issues of such a fundamental nature that they must be considered." *Robinson v. Pacificorp*, 10 P.3d 1133, 1136 (Wyo.2000); *WW Enterprises, Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo.1998). The collateral attack issue is not one concerning jurisdiction, and it cannot be considered by this court based on that exception to the general rule. Whether the collateral attack issue is "fundamental" we do not decide today. However, it is appropriate for us to address issues that are bound to emerge again if left unresolved. *Rocky Mountain Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1167 (Wyo.1982); *McGuire v. McGuire*, 608 P.2d 1278, 1286 (Wyo.1980). Because we believe the collateral attack principles are misplaced and misapplied in this instance, we will comment on them.

■ [¶ 14] Collateral attack principles apply where a party is seeking to attack or "undo" a prior court order. Here, Joyner did not seek to undo the order of protection; he sought to preclude the order from being used in a later prosecution. A similar collateral attack argument was swiftly rejected in the Washington case of *State v. Marking*, 100 Wash.App. 506, 997 P.2d 461, 463 (2000) review denied 141 Wash.2d 1026, 11 P.3d 825 (2000), where the court wrote:

Because Marking did not challenge the no-contact order when the district court issued it, the State argues that his objection to it now is an improper collateral attack. We disagree.

The validity of a protective order is an implicit element of the crime of violation of such order. *See City of Seattle v. Edwards*, 87 Wash.App. 305, 308, 941 P.2d 697 (1997) (discussing protective order issued pursuant to RCW 26.50.060(2)). Notwithstanding Marking's failure to challenge the order in district court, the State bore the burden at trial of proving the validity of the order beyond a reasonable doubt. *Edwards*, 87 Wash.App. at 308, 941 P.2d 697.

Thus, the determinative issue here is not the validity of the order per se, but rather whether the State proved beyond a reasonable doubt that the order was valid. *Edwards*, 87 Wash.App. at 307–309, 941 P.2d 697.

*See also State v. Schultz*, 106 Wash.App. 328, 25 P.3d 436, 438 (2001).

[¶ 15] In addition to the well-reasoned discussion above, we emphasize that Joyner did not seek to challenge or undo the protective order itself. Instead, he simply sought to prevent the use of the protection order in support of the felony prosecution. This he can do. In different circumstances, several Wyoming cases exemplify that a defendant can challenge the use of a prior order or conviction in later proceedings. *See Brisson v. State*, 955 P.2d 888, 892 (Wyo.1998) ("We hold that Brisson should have been provided counsel for his first conviction and that his uncounseled conviction cannot be used to enhance his current charge to a felony."); *Gunderson v. State*, 925 P.2d 1300, 1304 (Wyo. 1996) ("Appellant argues that, although the Nebraska and South Dakota convictions were classified as felonies in those states, they would have been punished as misdemeanors in Wyoming. He contends, therefore, that the convictions should not have been used to enhance his punishment under the habitual criminal statute."); *Johnston v. State*, 829 P.2d 1179, 1180 (Wyo.1992) ("Appellant attacks collaterally his prior convictions used for enhancement. He does not deny having

been convicted of the crimes. He asserts, however, that two of the prior convictions were defective and should not have been used against him in this enhancement proceeding.").

[¶ 16] Even if Joyner's attack on the order of protection can be considered a collateral attack, those principles are misapplied in this case. As a general rule, collateral attacks on judgments are not allowed. This general rule, and an exception to it, are well stated in 50 C.J.S. *Judgment* § 499 (1997):

> Generally, a judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding. Even if the judgment is voidable, that is, so irregular or defective that it would be set aside or annulled on a proper direct application for that purpose, it is well settled as a general rule that it is not subject to collateral impeachment as long as it stands unreversed and in force.

> However, under an exception to the general rule, a judgment is subject to collateral attack if it is void. Thus, a judgment which is absolutely void is entitled to no authority or respect, and therefore may be impeached at any time, in any proceeding in which it is sought to be enforced or in which its validity is questioned, by anyone with whose rights or interests it conflicts.

(Footnotes omitted.) A judgment obtained in violation of due process is void. *Matter of Adoption of MSVW*, 965 P.2d 1158, 1163 (Wyo.1998); *Interest of WM*, 778 P.2d 1106, 1110 (Wyo.1989). Thus, such a judgment may be collaterally attacked.

[¶ 17] To avoid confusion, we seek to clarify the extent of this opinion. Respect for the law and the finality of judgments are valued principles of this court. Nothing in this opinion should be construed as disregard for that principle. The presumption of validity still attaches to prior orders. Accordingly, the State does not have the initial burden of proof related to the validity of the protection order. This initial burden of production is placed on the defendant.

[¶ 18] Our previous discussions of the "burden of proof" have shown that the phrase "burden of proof" encompasses two distinct legal doctrines: the burden of persuasion and the burden of production. *Bando v. Clure Bros. Furniture*, 980 P.2d 323, 330 (Wyo.1999) (citing *Casper Iron & Metal, Inc. v. Unemployment Ins. Comm'n of Dep't of Employment*, 845 P.2d 387, 393 (Wyo. 1993)). In *Bando* we further explained the two legal doctrines as follows:

> The burden of persuasion, which normally becomes operative only after all the evidence is submitted, attaches to the party that runs the risk of nonpersuasion. This means if the party with the burden of persuasion has not sustained his burden, that party must fail. The related term, burden of production, is also known as the burden of producing evidence or going forward with the evidence. The burden involves the obligation of a party to present, at the appropriate time, evidence of sufficient substance on the issue involved to permit the fact finder to act upon it. Unlike the burden of persuasion, the burden of production shifts during the presentation of evidence.

*Id.* (citation omitted).

[¶ 19] With these principles in mind, we hold that the following procedure should apply when a defendant attacks the validity of the protection order. The defendant has the burden of production for making a prima facie showing that the order of protection was entered in violation of his constitutional rights. Should the defendant meet this burden of production, then the burden shifts and the prosecution must establish, beyond a reasonable doubt, that the order was constitutionally obtained.[5] The

5. As applied to Wyo. Stat. Ann. § 6–2–506(e)(iv), this court has never decided whether the violation of such order is a sentencing enhancement provision or an element of the offense. It looks to be an element of the offense. However, even if it is merely a sentencing enhancement provision, the State still bore the burden to prove that fact beyond a reasonable doubt. Besides the fact

trial court should determine such questions of law at a pretrial hearing.

[¶ 20]   The procedure outlined above is similar to the procedure for prior criminal convictions that become the basis for later habitual criminal status under Wyo. Stat. Ann § 6–10–201 (LexisNexis 2001). In those proceedings the following rules apply to the burden of production:

> In *Evans* [*v. State*, 655 P.2d 1214 (Wyo. 1982)], we indicated that a defendant has the burden of proof when asserting an affirmative defense (such as invalidity of an underlying conviction) in an habitual criminal proceeding. *Evans*, at 1222. Since then, we have refined our burden of proof standard in the context of a conviction of an habitual traffic offender. In *City of Laramie v. Cowden*, 777 P.2d 1089, 1091 (Wyo.1989), we stated that the defendant mounting a constitutional challenge to an underlying conviction in an habitual traffic offender proceeding must make a prima facie showing that one or more of his underlying convictions was not obtained in accordance with his constitutional rights. Once the defendant makes this showing, the prosecution has the burden of establishing, by a preponderance of the evidence, that the conviction was constitutionally obtained.[6]  We now hold this same standard applies to proceedings under the habitual criminal statute.

*Johnston v. State,* 829 P.2d 1179, 1180–81 (Wyo.1992).

[¶ 21]   Upon an examination of the facts, we see that the above-mentioned process is essentially what happened in this case. Joyner mounted a constitutional challenge to the underlying protection order, and the State was unable to prove the validity of that order beyond a reasonable doubt. Therefore, the trial court erred in denying Joyner's motion to dismiss.

[¶ 22]   Given this resolution, there is no need to address Joyner's remaining issues.

### CONCLUSION

[¶ 23]   We conclude that the district court erred in denying Joyner's motion to dismiss. We, therefore, reverse and remand this matter to the district court with instruction to (1) allow Joyner to withdraw his conditional guilty plea; (2) dismiss the felony information; and (3) remand the matter to the circuit court for further proceedings on the misdemeanor stalking charge.

---

of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be proved beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). As a protection order is not a prior conviction, we impose a reasonable doubt standard rather than

the preponderance of the evidence standard applicable to prior criminal convictions that become the basis for later habitual criminal status.

6.   Lest there be any confusion, as noted above, the State must establish, beyond a reasonable doubt, that the order of protection is valid.