# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 61

APRIL TERM, A.D. 2014

*May 12, 2014*

| | |
|---|---|
| **IN THE MATTER OF THE WORKER'S COMPENSATION CLAIM OF:** | |
| **CHRISTINA S. HIRSCH, AN EMPLOYEE OF BORDER FOODS, INC.,** | |
| **Appellant (Petitioner/Claimant),** | |
| **v.** | S-13-0162 |
| **STATE OF WYOMING ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION,** | |
| **Appellee (Respondent/Objector).** | |

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
Jack D. Edwards of Edwards Law Office, P.C., Etna, Wyoming

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Samantha Caselli, Assistant Attorney General

*Before KITE, C.J., and HILL, DAVIS, and FOX, JJ., and WALDRIP, D.J.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]     Appellant Christina Hirsch sought worker's compensation benefits for back pain she believed was related to an earlier workplace accident.  The Office of Administrative Hearings (OAH) upheld the Wyoming Workers' Safety and Compensation Division's (Division) denial of temporary total disability and medical pay benefits, and the district court affirmed the OAH decision. Ms. Hirsch appeals to this Court, claiming that the OAH erred by failing to find a causal connection between the workplace accident and her delayed back pain.[1]  We affirm.

## ISSUES

[¶2]     While Ms. Hirsch raises several issues on appeal, we find the dispositive question to be whether there is substantial evidence to support the OAH's denial of benefits before a remand from the district court for supplementation of the record.  We therefore restate the controlling issue as follows:

> Were the OAH's *Findings of Fact, Conclusions of Law, and Order* contrary to the overwhelming weight of the evidence?

## FACTS

[¶3]     In 2003, Ms. Hirsch slipped while working for Taco Bell in Gillette, Wyoming. She felt immediate back pain and soon had numbness in her left leg, as well as urinary incontinence.  As a result, an emergency laminotomy and discectomy were performed at the L5-S1 levels of Ms. Hirsch's lumbar spine on November 6, 2003.  The initial surgery alleviated her symptoms somewhat, but pain and incontinence returned soon thereafter, necessitating a follow-up procedure on March 26, 2004.  After her second surgery, Ms. Hirsch was pain-free and had no problems with bladder control.

[¶4]     In August of 2004, Ms. Hirsch again fell at work and strained her back.  Although she experienced lower back pain, she had neither numbness nor loss of bladder control. A Wyoming worker's compensation claim was opened and benefits were awarded.  Ms. Hirsch participated in physical therapy throughout the remainder of 2004.

[¶5]     Things were going well until she slipped and fell again while leaving work on December 20, 2004.  According to a physician's note reflecting a visit two days later, Ms.

---

[1] Ms. Hirsch presents additional arguments that the OAH erred in its analysis of evidence used to supplement the record after remand from the district court.  The supplemented evidence was proffered by the Division and provides further support for the denial of Ms. Hirsch's claim.  We need not address these arguments because we find that the initial OAH order was supported by substantial evidence, irrespective of the evidence with which the record was supplemented. *See Fieseler v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2013 WY 116, ¶ 14 n.3, 309 P.3d 1233, 1236 n.3 (Wyo. 2013).

Hirsch had pain in her back and tailbone region with numbness in her right leg. She reported that she still had occasional episodes of incontinence, which, according to the treating doctor, "stem back to her original large disc herniation and presumed cauda equina syndrome." A radiologist's report concerning an MRI conducted on December 27, 2004, found no evidence of recurrent disc herniation at L5-S1, but it did note loss of disc height and endplate degenerative change.

[¶6]  From the end of 2004, Ms. Hirsch was generally pain-free and asymptomatic until 2009. On May 17, 2009, she slipped and fell while working at a Taco Bell restaurant in Jackson, Wyoming. At the hearing before the OAH, she testified[2] that

> I went to hand an order out and go back to make a new order, and that's when I slipped and my foot went behind me. And I tried to catch myself on a rolling table that had a Quesadilla machine on it. I did go to the ground. It did hurt, but I got up and continued to make orders because we got really busy.
>
> When it slowed down, I went to the lobby to look at my foot and that's when it was swollen and blue and purple and huge.

The only pain that Ms. Hirsch described feeling at the time of the incident was that her "whole right leg hurt" and that her ankle was "killing" her.

[¶7]  After finishing her shift, Ms. Hirsch went to the local hospital emergency room, where orthopedic surgeon David Khoury treated her ankle injury. Dr. Khoury diagnosed Ms. Hirsch with an ankle "sprain," and over the next several months treated her with "four different casts, a couple of boots, and . . . crutches."

[¶8]  Ms. Hirsch was eventually referred to orthopedic surgeon and ankle specialist Dr. Heidi Michelsen-Jost for further treatment. While being treated by Dr. Jost, she complained of severe right ankle and lower leg pain, which she described as aching, numbing, shooting and tingling. Dr. Jost then referred her to Dr. Philip Blum, an anesthesiologist who specializes in pain management.

[¶9]  Dr. Blum first examined Ms. Hirsch on July 17, 2009, at which time she complained only of ankle and lower leg pain, and not of back pain. He recommended lumbar sympathetic nerve block treatments. He administered nine sympathetic block

---

[2] The Wyoming report of injury, although not filled out by Ms. Hirsch, states that she "was handing a drive thru order out when I turned around to go make an order, slipped, caught myself with table. I heard a pop in my foot."

treatments over several months. These caused serious pain at the injection site in her back, as well as incontinence which started after the third injection, according to Ms. Hirsch.

[¶10] Dr. Jost eventually determined that Ms. Hirsch's ankle required reconstructive surgery, which she performed on August 18, 2009.[3] The ankle was cast after the surgery, and Ms. Hirsch began physical therapy several weeks later. A second surgery to remove hardware installed in the ankle was performed in November of 2009.

[¶11] Ms. Hirsch applied for medical benefits and temporary total disability payments related to her right ankle injury. The Division found that the ankle injury was compensable and approved the benefits, opening a 2009 file which was separate from the file it had opened in 2004 for her back injury. Ms. Hirsch was released to return to work after her ankle injury on April 30, 2010.

[¶12] Months after her ankle surgeries, Ms. Hirsch began to experience back pain. While she contends that certain records[4] reflect implied or indirect complaints of back pain, the record in which that pain was first clearly documented was dated December 17, 2009, seven months after the May 2009 incident. Dr. Jost referred Ms. Hirsch to Dr. Geoffrey Skene, D.O., a specialist in physical and rehabilitative medicine, and his clinical note of December 17 states that her chief complaints at the time were "low back and (L) leg pain." Dr. Skene summarized Ms. Hirsch's history of prior back injuries/surgeries and episodes of incontinence as well as her right ankle injury and treatment, and went on to note that:

> [Ms. Hirsch] notes that she has had [a] return of her back pain with one episode of urinary incontinence. In regards to symptoms, [Ms. Hirsch] describes pain in mid low back, (L) greater than (R). She notes it radiates in (L) lateral thigh and calf to the ankle. She notes numbness and tingling in her distal thigh and proximal calf occasionally in her toes. She notes her symptoms are worse with coughing, sneezing, and "sitting funny" and getting out of bed, improves with lying flat. She had one episode of urinary incontinence.

---

[3] Ms. Hirsch actually continued to work at Taco Bell from the date of her injury until her first surgery. During this time, she was restricted from being on her injured ankle; as a result she tended the cash register while seated on a stool.

[4] Ms. Hirsch contends that Dr. Blum's notes dated July 17, 2009, referencing lower leg pain and a physical therapy note dated August 7, 2009, which states that "it hurts from my hip down," imply back pain.

[¶13] Dr. Skene conducted a physical examination and found that Ms. Hirsch's gait was somewhat antalgic (the stance phase of the gait was shortened in relation to the swing phase in order to reduce pain), that there was tenderness to palpation in the left lumbar area, and that she had lower lumbar pain with extension and rotation bilaterally. His assessment was "[r]ecurrent HNP [herniated nucleus pulposus – *i.e.*, herniated disc] L5-S1 . . . [with] one episode of urinary incontinence." Based upon his evaluation, Dr. Skene recommended an MRI. The MRI showed:

- Disc extrusion and overall mild narrowing of the central spinal canal at T12-L1.

- No specific abnormalities at L1-2 and L2-3.

- Small central protrusion at L3-4.

- Mild broad-based bulging of disc at L4-5, with degenerative spurring off the facet joints. There is no stenosis.

- At L5-S1, there was disc space narrowing with endplate irregularity and Modic endplate-type signal changes suggestive of degenerative changes, persistent posterior ridging and disc bulge (lateral predominant). However, the central canal and neural formina appeared widely patent, suggesting that the disc bulge did not intrude upon the spinal nerves.

[¶14] After the MRI, Ms. Hirsch met with Dr. Skene again on December 21, 2009. Dr. Skene's notes from this visit are the first medical record reflecting Ms. Hirsch's attempt to connect her back pain to the May 2009 incident resulting in her right ankle injury. His note reports that:

> [Ms. Hirsch] fell while working at Taco Bell approximately seven months ago and noted bladder problems at that point. She also noted that her back pain increased, but after the fall, it became significantly worse after wearing her boot for her foot or ankle injury. At this time, we will have her see Dr. Beck on the 23rd to see if diskectomy T12-L1 would help alleviate some of the bladder symptoms again noting they had been over seven months' duration.

As the hearing examiner pointed out, Ms. Hirsch testified at the contested case hearing that her episodes of incontinence started after the third sympathetic block lumbar injection by Dr. Blum, not at the time of the 2009 incident in which her ankle was injured, contrary to what she told Dr. Skene.

4

[¶15] On December 23, 2009, Dr. Joshua Beck, another orthopedic surgeon, performed a physical examination and reviewed x-rays and the recent MRI of Ms. Hirsch's back. His notes reflect that her chief complaints at the time were low back and bilateral leg pain with numbness and tingling. However, Dr. Beck noted nothing indicating that Ms. Hirsch attributed these symptoms to the May 17, 2009 incident which caused her ankle injury. Ms. Hirsch testified at the contested case hearing before the OAH that she was upset with Dr. Beck because he was rude to her. Dr. Beck determined that she was not a good candidate for surgery due to a number of factors, and Ms. Hirsch sought a second opinion.

[¶16] On January 5, 2010, Ms. Hirsch met with Dr. Mary Neal, a board certified orthopedic surgeon whose practice is focused on spinal surgery. Dr. Neal's initial office note states:

> [Ms. Hirsch] injured her ankle in 5/09 when she slipped at work. She had surgery for this injury (Jost) and was using a brace and crutches post-operatively. With the use of her crutches, her low back pain increased. She has also had several episodes of urinary incontinence at night. She has been off her crutches for approximately 7 weeks and out of a walking boot for approximately 3 weeks. She still uses an ankle brace. Dr. Beck has recommended a fusion and she is here for evaluation.

Dr. Neal asked Ms. Hirsch to return with a copy of her medical records so that she could review them.

[¶17] At the second appointment on January 21, 2010, Ms. Hirsch returned with the requested records, including an MRI of her spine from December of 2004, which Dr. Neal compared to the MRI from December of 2009. Dr. Neal found that "[i]n review of the MRI scans, there is a right parmedian extrude disc fragment at T12-L1 . . . [and] discogenic changes at L3-4, L4-5, and L5-S1. L5-S1 has degenerative changes and modic changes . . . ." Dr. Neal felt that these findings could account for Ms. Hirsch's back pain, but she was not sure how to explain Ms. Hirsch's lower extremity symptoms. She ordered a myelogram and a CT scan to provide further diagnostic information.

[¶18] After reviewing the CT scan, Dr. Neal determined that there was significant degenerative disc disease at L5-S1, as well as herniated nucleus pulposus from the interior of the disc at T12-L1. Dr. Neal indicated that the latter was clearly related to her first workplace injury, as the same abnormality was visible on her 2004 MRI scan. Based upon these findings, Dr. Neal determined that surgical intervention was necessary to address both the herniated and the degenerated disc, which were probably causing Ms. Hirsch pain in the thoracic/upper back and lumbar regions.

5

[¶19] On February 16, 2010, after a discussion of the risks the surgical procedure entailed, Ms. Hirsch agreed that Dr. Neal should proceed with decompression and a discectomy at T12-L1, as well as a posterior decompression, fusion and stabilization at L5-S1. Dr. Neal's notes reflect that the diagnosis at the L5-S1 level was "degenerative disc disease after 2 previous laminotomies."

[¶20] Ms. Hirsch submitted a preauthorization for the surgery to the Division, but mistakenly submitted it under the 2004 worker's compensation case number. Dr. Neal performed an L5-S1 fusion and a hemilaminectomy with discectomy at T12-L1 on March 3, 2010, before the Department responded to the preauthorization request. Ms. Hirsch submitted the bills for the procedure to the Division for reimbursement, but the Division declined to pay them on April 5, 2010, determining that her new back issues were not related to the original 2004 work injury.

[¶21] The Division issued a final determination under the 2009 case number on May 5, 2010, formally denying the preauthorization request for back surgery which had already been performed. Ms. Hirsch had also applied for temporary total disability benefits, and that request was also denied because the Division's records indicated that she was released to return to work on May 1, 2010. She objected to the Division's determination, stating that her "back was injured as a result of the 2009 injury and . . . [she] is not released to work because of her back injury." The matter was then referred to the OAH for a contested case hearing.[5]

[¶22] Dr. Neal testified to the following by deposition at the hearing:

- Ms. Hirsch's back condition was related to her preexisting condition (*i.e.*, the 2004 back injury) and the use of crutches and the walking boot (related to her right ankle injury in 2009) caused her low back pain to increase. Specifically, Dr. Neal opined that "I think it can be a combination of three things primarily. One is when people have a slip and fall they almost always have a component sort of a jerking and almost always have some twisting component. That is probably the primary problem. The secondary problem is that when people use a walking boot or have a foot or lower extremity problem and they change their walking, they change their biomechanics, that also can increase the inflammatory response. So I can't identify which component, but it could be any of those or all of them."

- Any determination as to how to "split" the causes would depend on how well Ms. Hirsch was doing before the May 2009 incident compared to her status afterward. To Dr. Neal's knowledge, Ms. Hirsch was fully functional before the May 2009

---

[5] It was originally referred to the Medical Commission, but was sent back to the Division due to lack of subject matter jurisdiction.

injury, but when she examined Ms. Hirsch after the incident, Ms. Hirsch was not then fully functional.

- The May 2009 incident "certainly aggravated" the degenerative process at L5-S1. The incident caused the condition requiring surgery because Ms. Hirsch was no longer able to perform her duties at work, back pain was interfering with her activities of daily living, and she was not improving with non-operative treatment. However, on cross examination, when asked whether she believed Ms. Hirsch would have required an L5-S1 fusion without her 2009 injury, Dr. Neal answered: "Of course that's an unknown because no one has a crystal ball. Having said that, at that particular disk level many people go on and find a stable position and not have pain and not require surgery. But of course the only honest answer is that neither I nor anyone else would be able to accurately predict whether she would or would not have required treatment."

- As to the absence of any back pain immediately after the May 2009 incident, Dr. Neal explained that Ms. Hirsch's back pain could have been masked by pain from the ankle injury, by medications, or by the sympathetic nerve block treatments administered by Dr. Blum. The absence of immediate complaints of back pain could also have been because her back was not the primary problem until later. When questioned as to whether she thought that it would be reasonable to believe that Ms. Hirsch's symptoms in her foot based upon the acute nature may have masked some of the symptoms in her lower back, Dr. Neal answered "absolutely."

[¶23] The Division required Ms. Hirsch to submit to medical examinations by two physicians it selected, Drs. Paul Ruttle, M.D. and Brian Tallerico, D.O.[6] Dr. Ruttle saw Ms. Hirsch on June 19, 2010. Dr. Ruttle detailed the medical records that he reviewed as they related to the ankle injury, and documented the history of the injury, current complaints, conducted a physical examination of Ms. Hirsch, and reviewed the x-ray taken in May 2009. He assigned Ms. Hirsch a 2% lower extremity impairment rating and a 1% whole person impairment based on her ankle injury.

[¶24] The Division requested that Dr. Ruttle assess Ms. Hirsch in relation to the back injury "sustained on August 3, 2004." As a result, his discussion of the case and his

---

[6] As the hearing examiner pointed out, neither Dr. Ruttle's nor Dr. Tallerico's qualifications are reflected in the record. Nevertheless, the examiner noted that these doctors were orthopedists, and that conclusion appears to be correct based upon their reports. While we assume that these doctors are known to the hearing examiner based on previous experience, we are concerned over what appears to be the Division's common practice of not documenting expert qualifications by curricula vitae or other acceptable means in proceedings before the OAH. The administrative record should reflect the qualifications and specialties of these experts so that we and the district court have some basis to determine whether they are qualified to present the opinions they offer when we review for substantial evidence. Inclusion of a current CV should not impose an undue burden on the Division or the physician.

conclusions are somewhat confusing because his evaluation was directed to whether Ms. Hirsch's condition in 2010 was related to the 2004 lumbar spine injury. He did an extensive review of the medical records from November 2003 through March 2010, focused on that issue in his examination of Ms. Hirsch, and also reviewed three MRI scans.

[¶25] As to whether Ms. Hirsch's back pain required surgery in 2010, and her claim that this pain was related to the use of crutches or walking with a cast after her ankle injury, Dr. Ruttle commented:

> It is also felt unlikely that simply using crutches rendered the degenerative segment at L5-S1 symptomatic. It should be noted that in all medical probability, the patient's symptoms requiring operation centered primarily about the L5-S1 disc space and in all medical probability had nothing to do with T12-L1. Reference should again be made to the patient's prior symptoms preceding multiple surgeries at L5-S1 which included low back pain, left lower extremity symptoms and urinary incontinence. . . .
>
> .    .    .
>
> It is felt that the degenerative changes about the L5-S1 segment were hastened by prior industrial injuries involving the L5-S1 segment.

Dr. Ruttle's letter opinion did not address the significance, if any, of the fact that Ms. Hirsch evidently did not suffer from low back pain or symptoms from December 2004 until December of 2009; rather, he simply found that it was unlikely that the use of crutches rendered the degenerative segment symptomatic. This conclusion is not particularly helpful to resolving the central issue in the case.

[¶26] On September 14, 2010, Ms. Hirsch was examined by Dr. Tallerico. He also reviewed all of the medical records available, including those of Drs. Neal, Blum, Beck, Skene and Jost. He noted that as of December 2009, there was no record of any low back complaint. The history taken by Dr. Tallerico states that Ms. Hirsch indicated that she did not have any back pain until after the first ankle surgery, which was roughly three months after the incident.

[¶27] After reviewing Ms. Hirsch's medical records and examining her, Dr. Tallerico agreed that the right ankle injury was caused by the May 2009 incident, as the Division had already decided. However, he did not believe that the post-2009 complaints of

8

thoracic and lumbar pain were related to the May 2009 accident. His conclusion was as follows:

> Right ankle injury related to the industrial injury of 05/17/09 on a more probable than not basis. This likely resulted in tears of the anterior talofibular, the calcaneofibular, and the anterior syndesmotic ligaments of the right ankle.
>
> .   .   .
>
> Complaints of thoracic and lumbar spine issues dating back to 2003 with recent surgery consisting of thoracic discectomy and an L5-S1 lumbar fusion, in my opinion unrelated to the industrial injury of 05/17/09 on a more probable than not basis.
>
> Temporarily the claimant developed low back complaints long after the injury and ended up having surgery approximately six months ago.
>
> The medical records that are provided for me focus on the right ankle issue with very little discussion regarding any back issues and their relatedness to the industrial claim of 05/17/09.
>
> .   .   .
>
> There is significant discussion by the claimant and some of her attending physicians regarding the relatedness of her low back issue and how it came about due to the claimant using crutches, etc.
>
> In my professional medical opinion it is impossible to relate her thoracic and lumbar spine issues to the industrial injury of 05/17/09 or to the fact that she was required to use crutches, boots, casts, etc.
>
> The claimant has a very well documented history of thoracic and lumbar spine issues with positive MRIs dating all the way back to 2003 and 2004. Therefore the need for thoracic discectomy and lumbar fusion cannot be reasonably related to an ankle injury or to recovery therein.

However, like Dr. Ruttle, Dr. Tallerico did not address the fact that Ms. Hirsch was asymptomatic in her lower back from December of 2004 to December of 2009, when her back pain reappeared. Rather, his opinion focused more on the absence of any complaint of back pain after the incident on May 17, 2009.

[¶28] A contested case hearing was held before the OAH on January 13, 2011. Ms. Hirsch testified at the hearing and offered the testimony of Dr. Neal by deposition. Basing her claim on two theories—aggravation of a preexisting condition and second compensable injury—she relied on Dr. Neal's testimony that the use of crutches, a walking boot, and the ankle injury aggravated her preexisting condition and that certain factors masked the back pain until months later. The Division presented the opinions of Drs. Ruttle and Tallerico by offering letters containing their findings from the medical examinations they had performed. As explained *supra*, both concluded that Ms. Hirsch's back pain was not related to the May 2009 incident or ensuing use of crutches and walking boot.

[¶29] After the hearing, the OAH issued a detailed 23-page *Findings of Fact, Conclusions of Law, and Order* upholding the Division's denial of Ms. Hirsch's requests for benefits on the ground that she had not met her burden of proving that she suffered aggravation of a preexisting back condition as a result of a work related injury. It also rejected her argument that she had suffered a second compensable injury.

[¶30] Ms. Hirsch petitioned the district court for review pursuant to Rule 12 of the Wyoming Rules of Appellate Procedure. Before a decision on the merits was rendered, however, the Division moved to supplement the record with a video recording of the May 17, 2009, incident, as permitted under W.R.A.P. 12.08. The district court granted the Division's motion to supplement the record and remanded the case to the OAH for further proceedings.

[¶31] After considering objections by Ms. Hirsch, the OAH admitted the video as supplemental evidence. Upon reviewing the video tape, the OAH issued its *Order on Remand* and affirmed its prior decision, concluding that the "video does lead to an additional finding that Hirsch's description of a fall to the ground is not credible . . . [and] that the basis for Dr. Neal's opinion as to the back injury occurring as a result of twisting is further weakened by the video evidence."

[¶32] Upon issuance of the *Order on Remand*, Ms. Hirsch filed a motion for new hearing and amendment of the order after remand, which the hearing examiner denied. Ms. Hirsch again petitioned the district court for review, and it affirmed the OAH decision. She then timely appealed to this Court.

10

## STANDARD OF REVIEW

[¶33] On appeal from a district court's review of an administrative decision, we review the case as if it had come directly from the administrative agency. *Birch v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2014 WY 31, ¶ 12, 319 P.3d 901, 906 (Wyo. 2014). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013), examining agency findings of fact by applying the substantial evidence standard and considering conclusions of law *de novo*. *Birch*, ¶ 12, 319 P.3d at 906; *see Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008).

[¶34] Regarding an agency's decision that the claimant did not satisfy her burden of proof, we have explained:

> Where a hearing examiner determines that a claimant has failed to carry her burden of proof, this Court must decide whether that determination was contrary to the overwhelming weight of the evidence. We defer to the agency's (or the hearing examiner's) determination of witness credibility unless it is clearly contrary to the overwhelming weight of the evidence.

*Leavitt v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2013 WY 95, ¶ 18, 307 P.3d 835, 840 (Wyo. 2013) (citations and quotation marks omitted); *see Little v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2013 WY 100, ¶ 28, 308 P.3d 832, 840 (Wyo. 2013).

[¶35] We also apply the arbitrary and capricious standard of review as a "safety net" to catch agency action "which prejudices a party's substantial rights or which may be contrary to the other review standards under the Administrative Procedure Act, yet is not easily categorized or fit to any one particular standard." *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 62, ¶ 9, 301 P.3d 137, 141 (Wyo. 2013).

## DISCUSSION

[¶36] The Wyoming Worker's Compensation Act defines a compensable injury as one "arising out of and in the course of employment." Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2013). In a contested case hearing for worker's compensation benefits, the claimant must prove all of the essential elements of her claim by a preponderance of the evidence, including a causal connection between a work-related incident and her injury. *Hayes v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2013 WY 96, ¶ 14, 307 P.3d 843, 847 (Wyo. 2013); 8 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 130.06[3][a] (2013). "We explained long ago that the 'arising out of' language of § 102(a)(xi) requires there to be a causal connection, a nexus between the

11

injury and some condition, activity, environment or requirement of the employment." *Little*, ¶ 29, 308 P.3d at 841 (ellipsis and some quotation marks omitted).

[¶37]  Congruent with this requirement, coverage is excluded for "[a]ny injury resulting primarily from the natural aging process or from the normal activities of day-to-day living, as established by medical evidence supported by objective findings." § 27-14-102(a)(xi)(G).    That said, "[a]lthough preexisting conditions are excluded from the definition of compensable injury by Wyo. Stat. Ann. § 27-14-102(a)(xi)(F) (LexisNexis 2013), an employee may recover if his employment aggravated, accelerated, or combined with the disease or infirmity to produce the condition for which compensation is sought." *Hayes*, ¶ 14, 307 P.3d at 847 (quotation marks omitted).

[¶38]  The OAH hearing examiner had to decide whether the back pain Ms. Hirsch began to experience in the latter part of 2009 was causally connected to the May 2009 incident and immediately ensuing compensable ankle injury.    Ms. Hirsch advanced two alternative but related theories of recovery—aggravation of a preexisting condition or second compensable injury.[7]  The OAH examiner did not find either theory to be proven, concluding instead that the evidence, including the expert testimony of Dr. Neal, did not establish the required causal connection.

[¶39]  Ms. Hirsch contends that the hearing examiner's decision to deny benefits is contrary to the overwhelming weight of the evidence in the record.  She argues that Dr. Neal's records and testimony establish a sufficient causal connection between the May 2009 incident and the increase in back pain due to aggravation of a preexisting injury. Ms. Hirsch also maintains that the hearing examiner improperly discounted her treating physician's testimony as to the cause of her back pain.  Although this case presents a close call, after reviewing the entire record and adhering to our standard of review, we must disagree.

---

[7] The former garnered the majority of Ms. Hirsch's argument, as it does on appeal before us.  In fact, her "argument" presented to this Court concerning her theory of a second compensable injury is substantively deficient.  The two paragraphs and three quotes of Dr. Neal's testimony falls short of the minimum requirement that cogent argument and citation to relevant authority be set forth.

> An appellant is required to present this court with relevant authority and cogent argument. It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there. The appellant, at a minimum, must attempt to relate the rule of law he depends upon to the facts of his case.

*Sonnett v. First Am. Title Ins. Co.*, 2013 WY 106, ¶ 26, 309 P.3d 799, 808 (Wyo. 2013).  "This Court has consistently held that it need not consider issues which are not supported by proper citation of authority and cogent argument or which are not clearly defined."  *Id.* (internal quotation marks omitted).  For this reason, we will not consider Ms. Hirsch's alternative argument.

[¶40] Ms. Hirsch's burden of proof consists of two elements: the burden of production and the burden of persuasion. *See Little*, ¶ 34, 308 P.3d at 842. The burden of production "involves the obligation of a party to present, at the appropriate time, evidence of sufficient substance on the issue involved to permit the fact finder to act upon it." *Id.* (quoting *Joyner v. State*, 2002 WY 174, ¶ 18, 58 P.3d 331, 337 (Wyo. 2002)). In turn, the burden of persuasion is "the burden of persuading the trier of fact that the alleged fact is true." *Id.* (quoting 2 *McCormick on Evidence* § 336, at 664 (7th ed. 2013)).

[¶41] Ms. Hirsch carried her burden of production by virtue of Dr. Neal's testimony that it was more probable than not that the May 2009 incident contributed in a material fashion to the aggravation of her delayed back injury. "A claimant produces sufficient evidence of causation to meet his burden of production when the medical expert testifies that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation or acceleration of the injury." *Little*, ¶ 35, 308 P.3d at 842 (internal quotation marks omitted). "Testimony by the medical expert to the effect that the injury 'most likely,' 'contributed to,' or 'probably' is the product of the workplace suffices under our established standard." *Id.* Specifically, Dr. Neal opined:

> Q. Assuming that Ms. Hirsch was asymptomatic in 2004 until her slip and fall in 2009 regarding symptoms to her lumbar spine on a more likely than not basis and in your medical opinion was Ms. Hirsch's injury at the L5-S1 caused by her slip and fall in May 2009?
>
> A. Yes.
>
> .   .   .
>
> Q. Doctor, in your opinion is it more likely than not that the slip and fall accelerated the disk degeneration in Ms. Hirsch's L5-S1?
>
> A. I don't think it accelerated the degenerative process. It certainly aggravated, stimulated, created, accentuated, whatever word you want to use, the symptoms related to the degenerative disk.
>
> Q. In your opinion do you feel the slip and fall -- do you feel more likely than not the slip and fall caused a material aggravation of degenerative disk disease?
>
> A. Yes.

Q. Doctor, do you feel that the requirement that [Ms. Hirsch] use crutches and wore a boot on her foot, do you feel that is more likely than not a material aggravation of her symptoms at L5-S1?

A. I do. . . .

. . .

Q. In your opinion is it unusual at all that once her ankle surgery was completed and the pain significantly subsided that that was when she first became most aware of the symptoms in her lower back?

A. I'm not surprised for that reason, but in addition to that during surgery you're in one position and then after surgery she was using crutches and the boot and all of those things. I think it's everything together.

[¶42] While Ms. Hirsch produced sufficient expert testimony to meet her burden of production, she also bore the burden of persuasion; that is, the obligation to persuade the hearing examiner that her delayed back pain was in fact causally connected to the May 2009 incident. The hearing examiner did not find Dr. Neal's testimony as convincing as the opinions of the Division's experts, primarily because of the tenuous explanation for the absence of complaints of back pain until months after the May 2009 incident. Dr. Neal's testimony was directly contradicted by the expert medical opinions of Drs. Ruttle and Tallerico. *See supra*, ¶¶ 25, 27. "When conflicting medical opinions are presented at the contested case hearing, the agency has the responsibility, as the trier of fact, to determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented." *Hayes*, ¶ 16, 307 P.3d at 849.

[¶43] The hearing examiner was in the best position to judge and weigh the medical evidence, and she was permitted to disregard an expert opinion if she found the opinion unreasonable or not adequately supported by the facts upon which it was based. *See id.* The examiner was confronted with conflicting medical opinions, and the evidence did not persuade her that Ms. Hirsch's preexisting back condition was materially aggravated by the May 2009 incident.

[¶44] Our review of the record finds sufficient evidence to support the OAH decision. Accordingly, whether we might reach the same result or not, we will not reweigh the evidence, but will instead defer to the OAH decision because it is based upon relevant evidence that a reasonable mind might accept. *See Spletzer v. State ex rel. Wyo.*

14

*Workers' Safety & Comp. Div.*, 2005 WY 90, ¶¶ 21-22, 116 P.3d 1103, 1112 (Wyo. 2005).

[¶45] Lastly, as pointed out by Ms. Hirsch, medical testimony may not always be necessary to establish causation. *See Hayes*, ¶ 19, 307 P.3d at 849. We do not find it necessary to analyze whether medical testimony was necessary to establish causation in this case, because both parties did in fact present expert testimony on that issue. The hearing examiner simply believed the Division's experts rather than Dr. Neal.

## CONCLUSION

[¶46] Ms. Hirsch did not carry her burden of persuading the OAH that the May 2009 incident caused her later back pain. The record contains substantial evidence without the contested supplementation to support the OAH's initial decision to deny benefits.

[¶47] Affirmed.