# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 36

OCTOBER TERM, A.D. 2021

March 11, 2022

CANDICE REICHENBERG,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

S-21-0119

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
   Donna D. Domonkos, Domonkos Law Office, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
   Bridget Hill, Wyoming Attorney General; Mark Klaassen, Deputy Attorney General; Peter Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

\* Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Ms. Candice Reichenberg suffered a compensated workplace injury in December 2014.  In 2019, she applied for additional benefits including carpal tunnel surgery for her left wrist and an increase to her impairment rating.  The Medical Commission Panel (Medical Panel) denied both requests.  It determined Ms. Reichenberg's carpal tunnel syndrome was not related to her workplace injury and her claim for an increased impairment rating was unsubstantiated.  Ms. Reichenberg appeals.  We affirm.

## ISSUE

[¶2]    Ms. Reichenberg raises a single issue:

> Was the Medical Panel's decision arbitrary, capricious, or otherwise not in accordance with the law?

## FACTS

### A.      Workplace Injury

[¶3]    Ms. Reichenberg was employed by Mountain Regional Services, Inc., working as a direct support professional for mentally and physically challenged clients.  Her duties included the restraint of individuals who presented a danger to themselves or others.  In December 2014, Ms. Reichenberg had to physically restrain a client for an extended time.  This resulted in injuries to her spine, shoulders, and wrists which she reported immediately.  The Workers' Compensation Division (the Division) opened a claim for her bilateral cervical spine, bilateral lumbar spine, bilateral wrist, middle thoracic spine, and bilateral shoulder.  Prior to her injury, Ms. Reichenberg had no history of orthopedic complaints or concerns.

### B.      Early Medical History

[¶4]    On May 15, 2015, Ms. Reichenberg underwent surgery fusing her spine at C4-5 and C5-6.  In December 2015, at the request of the Division, Dr. G.P. Massand conducted an independent medical examination (IME) to determine Ms. Reichenberg's impairment rating.[1]    Dr. Massand found Ms. Reichenberg's fusion surgery was reasonable and

---

[1] The governing statute, Wyo. Stat. Ann. § 27-14-604, provides:

> (a) In any contested proceeding, the hearing examiner may appoint a duly qualified impartial health care provider to examine the employee and give testimony.  The fee for the service shall be as ordered by the hearing examiner, with mileage allowance as is allowed to other witnesses to be assessed as costs and paid as other witness fees are paid.  The employer or

1

necessary treatment for her workplace injury. He arrived at a 15% whole person impairment rating for her cervical spine injuries and ordered an electromyography (EMG) and nerve conduction studies (diagnostic procedures to assess the health of muscles and the nerve cells that control them) "to determine [the] extent of residual nerve root problem of upper extremities." In April 2016, Dr. Massand found the tests negative for radiculopathy,[2] but "positive for very mild carpal tunnel syndrome, not related to her accident." Dr. Massand did not explain his finding that the carpal tunnel syndrome was unrelated to the workplace injury.

[¶5] Following Dr. Massand's evaluation, Ms. Reichenberg continued with physical and massage therapy as well as pharmaceutical pain treatment. She received cervical and lumbar spine steroid injections and medial radiofrequency ablations.

[¶6] In August 2016, she underwent a right shoulder surgery. In January 2017, her doctors performed a transitional level spinal fusion at C3-4 and C6-7. During this time, Ms. Reichenberg reported severe pain in her upper extremities but did not specifically mention her wrists.

[¶7] Following her shoulder and spine surgeries, on July 10, 2017, Dr. Bruce Newton conducted a second IME to reassess Ms. Reichenberg's impairment rating. Dr. Newton noted Dr. Massand's 2015 evaluation stating, "[Ms. Reichenberg's] carpal tunnel syndrome was unrelated to her industrial injury." Dr. Newton also concluded that Ms. Reichenberg had "[m]ild bilateral carpal tunnel syndrome, unrelated." As with Dr. Massand, Dr. Newton provided no explanation for his conclusion that the carpal tunnel syndrome was unrelated to her work injury. Dr. Newton concluded Ms. Reichenberg suffered additional impairment, and following his evaluation, Ms. Reichenberg was awarded payment for the additional 2% (1% lower back, 1% right shoulder) impairment rating.

[¶8] Ms. Reichenberg continued to receive pain treatments—including massage, physical, and pharmaceutical therapies—but reported her pain continued to increase. On January 29, 2018, Dr. Jed Shay performed a third IME after which he concluded Ms. Reichenberg's whole person impairment warranted another 1% increase for her right shoulder. Dr. Shay's report noted statements in the previous IMEs that found Ms. Reichenberg's carpal tunnel syndrome was not related to her industrial claim but made no

---

employee may, at his own expense, also designate a qualified health care provider who may be present at the examination of the employee and give testimony at later hearings.

*Serda v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2002 WY 38, ¶ 8, 42 P.3d 466, 469 (Wyo. 2002).

[2] "Radiculopathy describes a range of symptoms produced by the pinching of a nerve root in the spinal column." John Hopkins Medicine, *Radiculopathy*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy# (last visited Feb. 22, 2022).

further comment.  Dr. Shay would later become Ms. Reichenberg's physician for pain management treatment.

[¶9]    On February 26, 2018, the Division issued a Final Determination of Permanent Partial Impairment Benefit based on the evaluations by Dr. Massand (2015), Dr. Newton (2017), and Dr. Shay (2018).  It awarded Ms. Reichenberg a permanent impairment rating of 18% (15% cervical, 1% lower back, and 2% right shoulder).  On March 5, 2018, the Division limited Ms. Reichenberg's supportive care to two to four times a month.  Ms. Reichenberg objected, claiming this limited frequency was not sufficient.  The Division referred her claim to the Medical Commission.

## C.    Requests for Carpal Tunnel Treatment and Whole Person Impairment Increase

[¶10]  Dr. Joshua Beck began treating Ms. Reichenberg in October 2018.  Dr. Beck saw Ms. Reichenberg on a  regular basis from late 2018 through 2019 assisting her with pain management for her neck and bilateral upper extremities.  According to Dr. Beck, from her first visit, Ms. Reichenberg complained of symptoms probably relating to the carpal tunnel. He performed a clinical evaluation beginning with a history from Ms. Reichenberg.  He conducted a Durkan compression test (where the wrist is flexed and pressure is exerted over the carpal tunnel), and a Tinel test (where the wrist is tapped over the carpal tunnel). These tests indicated Ms. Reichenberg suffered from carpal tunnel syndrome.

[¶11]  An EMG conducted in November 2018, showed "mild to moderate" carpal tunnel syndrome.  Based on this information, Dr. Beck tried conservative carpal tunnel treatments including injections.  The injections provided temporary relief but over time the symptoms became progressively worse.   One year later, Dr. Beck's examination showed the development of weakness in the thenar musculature, indicating advancement of carpal tunnel syndrome.  Dr. Beck requested preauthorization for a carpal tunnel release in the left wrist with the expectation that the other wrist would need to be addressed afterward. A second EMG was conducted before the preauthorization request.  It showed that the "[l]eft median nerve conduction values have worsened since prior testing" but the right side had not significantly changed.

[¶12]  During his deposition, Dr. Beck testified he believed to a "good degree of medical certainty" that the carpal tunnel was related to Ms. Reichenberg's workplace injury based on "[a] combination of factors" including the patient's history and "multiple visits . . . involving multiple physical examinations."  When asked why, during the course of Ms. Reichenberg's treatment, he focused more on a request for a spinal cord simulator than carpal tunnel treatment, Dr. Beck explained:

> Well, I think she has both problems going on.  She has chronic neck pain and chronic symptoms of nerve pain down

3

both arms that would be well addressed with a cervical dorsal column stimulator.

> And the carpal tunnel syndrome is . . . somewhat of a separate issue or can be perceived as almost a double crush type injury [where a nerve is injured at two different locations.] . . . [T]he median nerve has a lot of C6 fibers. So C6 is injured at the neck and then you can have compression at the wrist.[3] You frequently need to address both . . . levels of pathology.

[¶13]  The Division denied the request for preauthorization concluding the carpal tunnel syndrome was not related to her workplace injury. Ms. Reichenberg objected. The matter was referred to the Medical Commission and consolidated with her earlier supportive care objection.

[¶14]  Prior to a hearing on those claims, Dr. Michael Kaplan performed a fourth IME of Ms. Reichenberg in January 2020. Dr. Kaplan arrived at a whole person impairment rating of 8%—2% whole person upper extremity (which did not include Ms. Reichenberg's left shoulder or wrist pain) and 6% cervical spine. As to the thoracic spine, Dr. Kaplan stated, "The pain generator is unclear. It was speculated that she may have strained some thoracic facets, but to my review there is no evident localizing data to support a primary result from medial branch blocks, or for that matter thoracic facet denervation." He concluded the thoracic spine complaints were the result of regional muscle spasm which resulted in a 0% rating.

[¶15]  Dr. Kaplan recognized the presence of bilateral carpal tunnel syndrome. However, as to the cause of that condition Dr. Kaplan stated:

> The diagnosis of "bilateral carpal tunnel syndrome" is not one that I can directly relate to her original work injury of 12/17/2014.

> That injury involved so many myofascial strains that I cannot objectively conclude that a strain of the wrist was also incurred bilaterally, with pathology and demyelination/axonopathy occurring directly to the median nerves from such exposures.

> She certainly appears to have some element of inflammatory symptoms at the carpal tunnel, as considering all

---

[3] Ms. Reichenberg had fusion surgery at her C6-7 level.

4

of the injections that she has completed, there has apparently been some success with carpal tunnel regional injection.

She may benefit from treatment focally moving forward, although some of the tests done by a physical therapist, electrodiagnostic/nerve conduction velocity analysis, have been normal but also abnormal on occasion.

I conclude that the testing data does not easily support probable clinical success with more aggressive surgical strategies.

[¶16]  After receiving Dr. Kaplan's report, the Division, on February 24, 2020, determined no change was warranted to Ms. Reichenberg's permanent impairment rating of 18%.  Ms. Reichenberg objected, seeking an additional 6% over her previous rating due to her increased shoulder and spine pain.  This objection was consolidated with the other issues (supportive care (limitation of pain management treatment) and denial of preauthorization for carpal tunnel surgery) to be heard by the Medical Panel.

[¶17]  Prior to the hearing, Ms. Reichenberg asked Dr. Shay to conduct a record review to assess whether "all the diagnos[e]s and ratings were considered fairly" in arriving at the Division's final rating.  After review, Dr. Shay opined that the injury to Ms. Reichenberg's thoracic spine supported a 1% increase in the total impairment rating and that the distal clavicle excision in her right shoulder justified an increase of 7%.  Dr. Shay's report was included in the material the Medical Panel reviewed.

## D.     The Medical Panel Decision

[¶18]  The Medical Panel heard Ms. Reichenberg's appeals on the denial of her carpal tunnel surgery and her challenge to the permanent impairment rating on July 14, 2020.  Prior to the hearing, the Division and Ms. Reichenberg reached an agreement on her supportive care claim, removing the claim from the Medical Panel's consideration.

[¶19]  The Medical Panel affirmed the Division, finding Ms. Reichenberg had failed to persuade the Medical Panel that her carpal tunnel syndrome was caused by the workplace injury, and she had failed to prove she was entitled to an increase in her permanent partial injury rating.

[¶20]  Addressing Ms. Reichenberg's burden of persuasion[4] on causation, the Medical Panel stated:

---

[4]          The burden of production "involves the obligation of a party to present, at

5

[Ms.] Reichenberg has met her burden of production with Dr. Beck's testimony, but the Panel does not find his testimony persuasive. Dr. Beck did not begin treating [Ms.] Reichenberg until almost four years after her injury. Carpal tunnel syndrome is a difficult diagnosis, and Dr. Beck's records do not evince the thoroughness one would expect for his diagnosis or treatment recommendation. For example, Dr. Beck does not appear to have seriously considered fibromyalgia, even though [Ms.] Reichenberg's prior records contain this diagnosis. . . . Indeed, Dr. Beck's own records diagnose [Ms.] Reichenberg with "chronic regional pain syndrome" then omit this diagnosis. . . . It is possible that [Ms.] Reichenberg has carpal tunnel syndrome. Her EMGs indicate a "very mild" abnormality in the wrists. . . . [Ms.] Reichenberg reports similar numbness and tingling in her legs, however, . . . and an EMG found no neurological basis for these symptoms[.] Dr. Newton, Dr. Shay, and Dr. Kaplan all conclude that surgical intervention does not help [Ms.] Reichenberg, yet Dr. Beck still recommends it.

In contrast, Dr. Kaplan's evaluation appears as thorough as possible, given [Ms.] Reichenberg's hypersensitivity during the examination. Dr. Kaplan could not connect carpal tunnel syndrome to the 2014 workplace injury. Neither could Dr. Massand. The Panel is not in a position to diagnose [Ms.] Reichenberg's wrist pain, or to criticize Dr. Beck's efforts to secure pain relief for her, but the evidence in the record about her mechanism of injury and symptomology is not specific enough to connect carpal tunnel syndrome to the 2014 workplace injury. . . . As [Ms.] Reichenberg has the burden of persuasion, her challenge to the Division's denial of pre-authorization fails.

---

the appropriate time, evidence of sufficient substance on the issue involved to permit the fact finder to act upon it." [*Little v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2013 WY 100, ¶ 34, 308 P.3d 832, 842 (Wyo. 2013)] (quoting *Joyner v. State*, 2002 WY 174, ¶ 18, 58 P.3d 331, 337 (Wyo. 2002)). In turn, the burden of persuasion is "the burden of persuading the trier of fact that the alleged fact is true." *Id.* (quoting 2 *McCormick on Evidence* § 336, at 664 (7th ed. 2013)).
*In re Hirsch*, 2014 WY 61, ¶ 40, 323 P.3d 1107, 1116 (Wyo. 2014). *Boyce v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 99, ¶ 23, 402 P.3d 393, 400 (Wyo. 2017).

[¶21]   The Medical Panel reviewed Dr. Kaplan's impairment rating and the record review conducted by Dr. Shay.  It found an additional rating for Ms. Reichenberg's thoracic spine was unwarranted because "[t]he rib cage provides stability to the thoracic spine, so traumatic spinal injuries at this level are much less common."  In addition, Dr. Shay's report did not "provide a connection between thoracic spine pain and [the] 2014 injury." The Medical Panel concluded:

> [Ms.] Reichenberg's medical records provide a convincing alternative explanation for any thoracic pain she suffers: her 2018 MRI shows "mild to moderate degenerative disc disease." . . . This is [a] more plausible [explanation for her pain], and the Panel declines to overturn the Division's refusal to provide additional impairment for the thoracic spine.

[¶22]   The Medical Panel also determined that the record did not support Dr. Shay's "significantly more disabling diagnosis [of Ms. Reichenberg's] right shoulder."  The Medical Panel found that although Ms. Reichenberg suffers from "tissue damage from the [shoulder] surgery and pain, her records indicate" the surgery was performed based on her subjective symptoms and "[t]he evidence from the surgery itself was that [Ms.] Reichenberg had no shoulder injury of any significance."  "The *AMA Guides* state . . . that 'incidental resection arthroplasty of the AC joint is not rated.'"  The Medical Panel explained:

> A diagnosis based impairment must rely on the "diagnosis with the highest *causally-related* impairment rating." . . . As Dr. Kaplan points out, while [Ms.] Reichenberg has tissue damage from the surgery and pain, her records indicate very little pathology. . . . Subjective symptoms were the justification for the right shoulder surgery. . . . The evidence from the surgery itself was that [Ms.] Reichenberg had no shoulder injury of any significance. . . . The Panel therefore finds the clavicle resection "incidental" and agrees with the diagnosis-based impairment rating by Dr. Kaplan.

E.     The District Court Decision

[¶23]   The district court affirmed the Medical Panel's decision despite finding that the Medical Panel did not offer a convincing explanation of its rationale for disregarding Dr. Beck's opinion:

> The hearing panel discredited Dr. Beck's diagnosis because he did not start treating [Ms.] Reichenberg until the end of October 2018, four years after the injury.  The hearing

7

panel makes no comment on how Dr. Beck's delay in treatment prevented him from making a credible diagnosis. However, the hearing panel found Dr. Newton, Dr. Shay, and Dr. Kaplan credible even though they diagnosed Ms. Reichenberg three, four, and six years, respectively, after the injury. The hearing panel does not mention or elaborate in any [way] why the delays between their diagnoses and her injury were inconsequential while finding that the delay that Dr. Beck experienced was consequential. . . .

The hearing panel did not address Dr. Beck's reasons for his diagnosis, and it did not include more than a cursory reference to the strength of his diagnosis. However, the hearing panel criticized Dr. Beck's opinion because it lacked thoroughness for a carpal tunnel diagnosis. The hearing panel found that Dr. Beck was not thorough because he failed to "seriously consider fibromyalgia." Nothing in the evidence shows that Dr. Beck did or did not consider fibromyalgia. Even if Dr. Beck did not consider fibromyalgia, the hearing panel does not address the significance of ruling out fibromyalgia before diagnosing carpal tunnel syndrome. The hearing panel does not address why the failure to "seriously consider fibromyalgia" undermined the credibility of Dr. Beck's opinion.

The hearing panel also discredits Dr. Beck's opinion for its lack of thoroughness because he diagnosed Ms. Reichenberg with complex regional pain syndrome (CRPS) on February 26, 2019, but on November 19, 2019, diagnosed her with "[b]ilateral carpal tunnel syndrome" and omitted the diagnosis of "[complex] regional pain syndrome." . . . The hearing panel does not explain how these diagnoses are exclusive and contradictory. The panel does not explain how the omission of the diagnosis of complex regional pain syndrome undermined the credibility of Dr. Beck's opinion.

[¶24] Despite these flaws, the district court determined substantial evidence supported the Medical Panel's decision that Ms. Reichenberg failed to prove her carpal tunnel syndrome was related to her workplace injury. The district court based its decision on Dr. Newton's 2017 conclusion that the carpal tunnel was not related and Dr. Kaplan's inability to make a pathological connection between her injury and the demyelination occurring to the median nerves.

[¶25] The district court also affirmed the Medical Panel's decision denying Ms. Reichenberg an increase to her permanent injury rating. It agreed with the Division's finding that Dr. Shay's analysis was based on the Division's previous payment for her shoulder treatment and was not supported by anatomic or diagnostic criteria.

## *DISCUSSION*

[¶26] Ms. Reichenberg contends the Medical Panel's reasons for rejecting Dr. Beck's opinion on causation were not valid and its decision is arbitrary and capricious. She also claims the Medical Panel arbitrarily failed to consider her claim under the second compensable injury criteria. Finally, she argues the Medical Panel relied on facts not in evidence to reach its conclusions regarding her permanent injury rating.

## *STANDARD OF REVIEW*

[¶27] We review an administrative appeal as if it came directly from the administrative agency, giving no deference to the district court's ruling on the appeal. *Boyce v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 99, ¶ 21, 402 P.3d 393, 399–400 (Wyo. 2017); *Price v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 16, ¶ 7, 388 P.3d 786, 789 (Wyo. 2017). Wyo. Stat. Ann. § 16-3-114(c) governs our standard of review:

> (c)     To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> > (i)     Compel agency action unlawfully withheld or unreasonably delayed; and
> >
> > (ii)     Hold unlawful and set aside agency action, findings and conclusions found to be:
> >
> > > **(A)     Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;**
> > >
> > > **. . . or**

9

**(E)** **Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.**

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2021) (emphasis added).

[¶28] "A workers' compensation claimant has the burden of proving all of the essential elements of [her] claim by a preponderance of the evidence." *Matter of Worker's Comp. Claim of Vinson*, 2020 WY 126, ¶ 28, 473 P.3d 299, 309 (Wyo. 2020) (quoting *Middlemass v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 14, 259 P.3d 1161, 1165 (Wyo. 2011)). "When both parties submit evidence, this Court will apply the **substantial evidence** test to fact findings." *Ross v. State ex rel. Dep't of Workforce Servs.*, 2022 WY 11, ¶ 9, 503 P.3d 23, 28 (Wyo. 2022) (emphasis added) (citing *Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 23, 448 P.3d 834, 843 (Wyo. 2019)). Where the Medical Panel:

> determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the . . . decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. . . . If, in the course of its decision making process, the [Medical Panel] disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test.

*Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008).

[¶29] "Even if an agency record contains sufficient evidence to support the administrative decision under the substantial evidence test, this Court applies the arbitrary-and-capricious standard as a 'safety net' to catch other agency action that may have violated the Wyoming Administrative Procedures Act." *Mirich v. State ex rel. Bd. of Trustees of Laramie Cnty. Sch. Dist. Two*, 2021 WY 32, ¶ 16, 481 P.3d 627, 633 n.4 (Wyo. 2021) (quoting *Exaro Energy III, LLC v. Wyoming Oil & Gas Conservation Comm'n*, 2020 WY 8, ¶ 11, 455 P.3d 1243, 1248–49 (Wyo. 2020)). The arbitrary and capricious standard "is not meant to apply to true evidentiary questions." *McIntosh v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2013 WY 135, ¶ 31, 311 P.3d 608, 616 (Wyo. 2013). Instead, it applies "when, for example, the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Id.* (internal citations and quotation marks omitted). "This standard also applies when a medical hearing panel takes notice of contested material facts that are not in evidence." *Id.*

> The arbitrary and capricious test requires the reviewing court to review the entire record to determine whether the agency reasonably could have made its finding and order based upon all the evidence before it. The arbitrary and capricious standard is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision.

*Vinson*, ¶ 27, 473 P.3d at 309 (quoting *Tayback v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2017 WY 114, ¶ 13, 402 P.3d 984, 988 (Wyo. 2017)). "Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it." *Worker's Comp. Claim of Bailey v. State ex rel. Dep't of Workforce Servs.*, 2015 WY 20, ¶ 11, 342 P.3d 1210, 1213 (Wyo. 2015) (quoting *Dale*, ¶ 22, 188 P.3d at 561).

[¶30] We review an agency's conclusions of law de novo and affirm only if its conclusions are in accordance with the law. Wyo. Stat. Ann. § 16-3-114(c)(ii)(A).

## *ANALYSIS*

[¶31] A claimant in a workers' compensation case has the burden to prove all the elements of the claim by a preponderance of the evidence. *Kenyon v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 22, 247 P.3d 845, 851 (Wyo. 2011). A preponderance of the evidence is "proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence." *Id.* (quoting *Judd v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2010 WY 85, ¶ 31, 233 P.3d 956, 968 (Wyo. 2010)). To prove entitlement to an award of benefits, a claimant must demonstrate two things. First that an "injury," as defined in Wyo. Stat. Ann. § 27-14-102(a)(xi) was sustained:

> "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2021). Second, the claimant must prove a causal connection exists between a work-related injury and the injury for which workers' compensation benefits are sought. *Kenyon*, ¶ 22, 247 P.3d at 851.

11

[¶32] Ms. Reichenberg claims the Medical Panel's decision rejecting carpal tunnel treatment cannot stand for two reasons. First, the Medical Panel's dismissal of Dr. Beck's opinion was without basis and was arbitrary and capricious. Second, the Medical Panel did not act in accordance with the law when it failed to consider the second compensable injury rule in its findings. She also claims the Medical Panel's determination denying an increase in her permanent injury rating is arbitrary and capricious because the decision relied on the Panel's independent finding that the "rib cage provides stability to the thoracic spine, so traumatic spinal injuries at this level are much less common."

## A.     The Medical Panel's Decision to Disregard Dr. Beck's Opinion

[¶33] Ms. Reichenberg argues the Medical Panel failed to supply a rational basis for rejecting Dr. Beck's opinion. In support of her argument, she quotes the district court's analysis of the Medical Panel's lack of consistency and detail pervasive throughout its reasoning. *Supra* ¶ 23. The Division responds that, "[g]iven the uncertainty and lack of medical evidence to support causation, the Medical Commission acted within its discretion in scrutinizing and ultimately rejecting Dr. Beck's opinion relating the carpal tunnel syndrome to the work injury."

[¶34] It is axiomatic that the Medical Panel may disregard an expert medical opinion related to causation "if it 'finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete or inaccurate medical history[.]'" *Boyce*, ¶ 26, 402 P.3d at 400–01 (quoting *Price*, ¶ 15, 388 P.3d at 791–92). "In weighing the medical opinion testimony, the fact finder considers: (1) the opinion; (2) the reasons, if any, given for it; (3) the strength of it; and (4) the qualifications and credibility of the witness or witnesses expressing it." *Anastos v. Gen. Chem. Soda Ash*, 2005 WY 122, ¶ 20, 120 P.3d 658, 666 (Wyo. 2005) (quoting *Bando v. Clure Bros. Furniture*, 980 P.2d 323, 329–30 (Wyo. 1999)).

[¶35] "Hearings before Medical Commission panels are to be conducted in accordance with the Wyoming Administrative Procedure Act." *Worker's Comp. Claim of Decker v. State ex rel. Wyoming Med. Comm'n*, 2005 WY 160, ¶ 26, 124 P.3d 686, 694 (Wyo. 2005). An ultimate fact such as causality must be based on a thorough explanation of the basis of that fact:

> "It is insufficient for an administrative agency to state only an ultimate fact or conclusion, but each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis each ultimate fact or conclusion was reached. **The court must know the why.**" *Geraud v. Schrader*, 531 P.2d 872, 879 (Wyo. [1975]), *cert. denied sub nom. Wind*

12

*River Indian Education Association, Inc. v. Ward*, 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975).

*Mekss v. Wyoming Girls' School, State of Wyo.*, 813 P.2d 185, 201–02 (Wyo. 1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992).

. . . [A] hearing examiner must make findings of basic facts upon all of the material issues in the proceeding and upon which its ultimate findings of fact or conclusions are based. Unless that is done there is no rational basis for judicial review.

*Decker*, ¶¶ 26–27, 124 P.3d at 694–95 (emphasis added) (citations omitted).

[¶36] Our independent review of the record reveals that the Medical Panel's decision lacked cohesiveness. For example, in discounting Dr. Beck's testimony it observed that Dr. Beck did not begin treating Ms. Reichenberg until almost four years after her injury. Yet, it made no mention of an even greater time lapse in evaluating Dr. Kaplan's report. The Medical Panel criticized Dr. Beck's opinion on causation because his records and testimony did not address fibromyalgia, a diagnosis contained in Ms. Reichenberg's prior records. Yet nothing in the record indicates the fibromyalgia diagnosis contributed to Dr. Kaplan's opinion on causation. The Medical Panel does not adequately explain or analyze what makes Dr. Kaplan's report more persuasive than Dr. Beck's. *Geraud v. Schrader*, 531 P.2d 872, 879 (Wyo. 1975) ("It is the duty of an administrative agency to point out in its decision how it arrived at its final facts and conclusions. There may or may not be formed, a valid syllogism.").

[¶37] Although the Medical Panel was perfunctory in its rejection of Dr. Beck's testimony, we are bound by our standard of review. We have repeatedly "recognize[d] the expertise the Medical Commission brings to medically contested cases and the value of the Commission's expertise in honing in on the critical evidence." *Decker*, ¶ 33, 124 P.3d at 696; *Worker's Comp. Claim of Rodgers v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2006 WY 65, ¶ 21, 135 P.3d 568, 576 (Wyo. 2006) ("Medical Commission members bring valuable experience and expertise to their review of Division decisions, but that review must be performed in accordance with the requirements of the Wyoming APA."). When reviewing the Medical Panel's determination that a claimant failed to meet his burden of proof, we:

will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.

> Because the administrative body "is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses," we will defer to the Medical Commission's findings of fact unless they are clearly contrary to the overwhelming weight of the evidence in the record.

*Hart by & through Hart v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2018 WY 105, ¶ 18, 442 P.3d 653, 659 (Wyo. 2018) (internal citations omitted).

[¶38] The Medical Panel's ultimate finding is not clearly contrary to the overwhelming weight of the evidence. In 2015, Dr. Massand plainly stated the carpal tunnel was not related to the work injury. Neither Ms. Reichenberg nor any doctor disputed this conclusion prior to Dr. Beck's contrary assessment. In a subsequent IME, Dr. Kaplan could not objectively conclude that a strain of the wrist was related to Ms. Reichenberg's original injury. The Medical Panel's ultimate determination was based on its finding that "the evidence in the record about [Ms. Reichenberg's] mechanism of injury and symptomology is not specific enough to connect carpal tunnel syndrome to the 2014 workplace injury." Dr. Beck speculated that the injury could be from a pinched nerve but did not point to any specific medical evidence connecting a pinched nerve to her 2014 injury. Instead, he stated his opinion was based on "[a] combination of factors" including the patient's history and "multiple visits . . . involving multiple physical examinations." On the other hand, in 2015, Dr. Massand reported there was no evidence of radiculopathy, and Dr. Kaplan could not connect the carpal tunnel to Ms. Reichenberg's injury.

[¶39] The claimant must prove a causal connection exists between a work-related injury and the injury for which workers' compensation benefits are sought. *Kenyon*, ¶ 22, 247 P.3d at 851. Here, the record contains substantial evidence in support of the Medical Panel's conclusion that Ms. Reichenberg had not met her burden of proof. Its determination was not arbitrary or capricious.

## B.    Consideration of Second Compensable Injury Rule

[¶40] Ms. Reichenberg claims the Medical Panel did not act in accordance with the law when it failed to apply the second compensable injury rule to the facts of her case. She acknowledges that she did not explicitly raise the rule as a theory of recovery in the contested case hearing but asserts that the argument and evidence she presented were sufficient to alert the Medical Panel to this theory of recovery. She points to the Medical Panel's discussion of the second compensable injury rule in its citation of applicable law and claims the Medical Panel failed to apply that law to the facts of her case.

[¶41] The Division argues that the Medical Panel did apply the rule, although not explicitly, when it made its decision on causation. We address this argument at the outset

14

of our discussion. The Division claims that, although the Medical Panel did not specifically mention the second compensable injury rule in its application of the law to the facts, it addressed the rule when it stated, "the evidence in the record . . . is not specific enough to **connect** [rather than relate] carpal tunnel syndrome to the 2014 workplace injury." We reject this argument. The reviewing court is not tasked with searching for such nuance in its evaluation of the record. The conclusion that the second compensable injury rule did not apply must be supported by explanation. In the appropriate circumstances, the Medical Panel must directly address the application of the second compensable injury rule.

[¶42] The second compensable injury rule provides that a subsequent injury may be compensable when "an initial compensable injury ripens into a condition requiring additional medical [treatment]." *Triplett v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2021 WY 118, ¶ 37, 497 P.3d 903, 912 (Wyo. 2021) (quoting *In re Kaczmarek*, 2009 WY 110, ¶ 9, 215 P.3d 277, 281 (Wyo. 2009)). "[A] subsequent injury or condition is compensable if it is causally linked to the initial compensable work injury." *Ball v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2010 WY 128, ¶ 24, 239 P.3d 621, 628 (Wyo. 2010) (citing *Alvarez v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2007 WY 126, ¶ 18, 164 P.3d 548, 552 (Wyo. 2007)). "[T]he claimant must show, by a preponderance of the evidence, that it is more probable than not that the second injury was caused by the first." *Ball*, ¶ 24, 239 P.3d at 628 (quoting *Kaczmarek*, ¶ 11, 215 P.3d at 282 n.3).

[¶43] "[T]he causal connection between an accident or condition at the workplace is satisfied if the medical expert testifies that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation or acceleration of the injury." *In re Pino*, 996 P.2d 679, 685 (Wyo. 2000) (citing *Claim of Taffner*, 821 P.2d 103, 105 (Wyo. 1991)). "We do not invoke a standard of reasonable medical certainty with respect to such causal connection." *Id.* (citing *Kaan v. State ex rel. Wyoming Worker's Comp. Div.*, 689 P.2d 1387, 1389 (Wyo. 1984)). "Testimony by the medical expert to the effect that the injury 'most likely,' 'contributed to,' or 'probably' is the product of the workplace suffices under our established standard." *Id.* (citing *Kaan*, 689 P.2d at 1389).

[¶44] The hearing examiner "has an obligation to invoke and apply the rules of law that support a claimant's theory of the case." *Pino*, 996 P.2d at 687. Ms. Reichenberg claims her situation is similar to those we considered in *Pino* and *Carabajal*. In *Carabajal*, the employee had suffered a work-related lower back injury. Several years after last receiving benefits for his injury, the employee sought medical treatment for back pain. The employee applied for medical and temporary total disability benefits citing his previous work injury as the cause of his current problems. The hearing examiner denied benefits and the district court affirmed. *Carabajal v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2005 WY 119, ¶¶ 3–7, 119 P.3d 947 at 949–50 (Wyo. 2005).

15

[¶45] On appeal, the employee argued that, even though he had not explicitly raised the applicability of the second compensable injury rule, his argument and the evidence he presented were sufficient to alert the hearing examiner to his theory of recovery. *Id.* ¶ 19, 119 P.3d at 953–54. We agreed, finding "[t]he information presented by Mr. Carabajal was sufficient to alert the hearing examiner to Mr. Carabajal's theory of the case." *Id.* ¶ 21, 119 P.3d at 954. We held that, "[u]nder the[se] circumstances, the failure to [invoke the second compensable injury rule] constitute[d] a decision 'not in accordance with law.'" *Id.* (quoting *Pino*, 996 P.2d at 687).

[¶46] In this case, however, no medical expert testified that Ms. Reichenberg's carpal tunnel syndrome "ripened" into a second compensable injury or that her initial injury materially contributed to the precipitation, aggravation, or acceleration of the injury. Dr. Beck's opinion addressed only his belief that her carpal tunnel syndrome was caused at the time of her injury. The Medical Panel's conclusion that the 2014 workplace injury was not connected to her carpal tunnel syndrome is supported by substantial evidence. *Chavez v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2009 WY 46, ¶¶ 26–27, 204 P.3d 967, 973–74 (Wyo. 2009). The Medical Panel's decision is not arbitrary or capricious and is in accordance with law.

## C. Applying Facts Not in Evidence

[¶47] Ms. Reichenberg maintains the Medical Panel's refusal to increase her impairment rating is arbitrary and capricious because the Medical Panel relied on its independent consideration of facts not in evidence. In its Findings of Fact, it stated:

> The Panel also finds no basis for an additional impairment rating for [Ms.] Reichenberg's thoracic spine. The rib cage provides stability to the thoracic spine, so traumatic spinal injuries at this level are much less common. Dr. Shay's report does not provide a connection between thoracic spine pain and [Ms.] Reichenberg's 2014 injury.

[¶48] There was no medical testimony from any expert relating to the rib cage affecting the probability of a thoracic spine injury. Ms. Reichenberg turns to *Decker*, ¶ 34, 124 P.3d at 697, where we reversed the Medical Commission's finding that Mr. Decker failed to meet his burden of proof. We concluded that, "[i]nstead of weighing the medical opinions and other evidence, the Medical Commission appears to have independently diagnosed Decker based on symptoms reported by Decker and described in his medical records" and by "us[ing] the information elicited in response to [the Medical Panel's] questions to diagnose Decker." *Id.* ¶¶ 31–32, 124 P.3d at 696.

[¶49] The Division argues the Medical Panel's comment was "based on the evidence" which is specifically permitted under the Medical Commission's rules and regulations:

(a) The medical hearing panel shall make and enter a written decision and order containing findings of fact and conclusions of law, separately stated. The findings of fact shall be derived from the evidence of record in the proceeding, matters officially noticed in that proceeding, and matters within the medical hearing panel's knowledge as acquired through performing its functions and duties. Such findings shall be based on the kind of evidence on which reasonably prudent persons are accustomed to rely upon the conduct of their serious affairs, even if such evidence would be inadmissible in a civil trial. The medical hearing panel's experience, technical competence and specialized knowledge may be utilized in evaluating the evidence.

Rules and Regulations, Wyoming Medical Comm'n, Workers' Comp. Div. ch. 10, § 3(a) (Feb. 14, 2003), https://rules.wyo.gov/Search.aspx. The Division argues "The generalized medical observation that traumatic injury to the thoracic spine is less likely due to anatomic factors is relevant specialized knowledge employed to weigh the evidence presented. Such an observation is clearly within the Medical Commission's expertise and is allowed under the Medical Commission rules and regulations."

[¶50]   The Division's argument is similar to the argument made in *Rodgers*, ¶¶ 37–41, 135 P.3d at 581–82. At issue in *Rodgers* was the Medical Panel's finding that "This Panel notes that a Schatzki's ring is also known as a lower esophageal ring and generally consists [of] thin rings of tissue that occur in the lower (distal) esophageal junction and is generally associated with hiatal hernia and is not caused by reflux." *Id.* ¶ 37, 135 P.3d at 581. Mr. Rodgers claimed the Medical Panel improperly took judicial notice of a contested fact when it made this finding. The Division argued, based on the same logic it promotes in this case, that the Medical Panel was well within its authority. We disagreed then and we disagree now.

[¶51]   We held:

Wyo. Stat. Ann. § 16-3-108(d) (LexisNexis 2005) addresses an agency fact finder's authority to take notice of certain facts. It provides:

Notice may be taken of judicially cognizable facts. In addition notice may be taken of technical or scientific facts within the agency's specialized knowledge or of information, data and material included within the agency's files. The parties shall be notified either

17

before or during the hearing or after the hearing but before the agency decision of material facts noticed, and they shall be afforded an opportunity to contest the facts noticed.

In addition to the requirements of § 108(d), this Court has held that an administrative agency should take judicial notice only of facts that are not subject to reasonable dispute. *Heiss v. City of Casper Planning and Zoning Comm'n*, 941 P.2d 27, 31 (Wyo. 1997).

The Medical Commission's above-quoted finding was inappropriate for two reasons. First, as reflected in the medical sources quoted in Rodgers' brief, the etiology of a Schatzki's ring is not a fact that is not subject to reasonable dispute. . . . Second, the Medical Commission did not provide notice to the parties of the material facts noticed or allow the parties an opportunity to contest the facts noticed as required by § 108(d).

. . .

We disagree that [Rules, Medical Comm'n, ch. 10, § 3(a)] authorizes a Medical Commission panel to take notice of any material fact within its expertise regardless of whether the fact is subject to reasonable dispute and without following the procedure set forth in § 16-3-108(d). The plain terms of Chapter 10, Section 3(a) require that the panel's findings of fact be derived from the record. The highlighted sentence of the rule merely acknowledges that a Medical Commission panel brings expertise to its evaluation of medical evidence and opinions. As we observed in *Decker*, we anticipate that the Medical Commission's expertise will assist it in evaluating evidence, but the Medical Commission's decisions must still comply with the Wyoming APA. *Decker*, ¶¶ 33–34, 124 P.3d at 696–97; *see also Jackson v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 786 P.2d 874, 878–79 (Wyo. 1990) (agency hearing procedures must comply with the Wyoming APA). In making its Schatzki's ring finding the Medical Commission took notice of a contested material fact without following the procedures set forth in the Wyoming APA.

*Rodgers*, ¶¶ 38–39, 41, 135 P.3d at 581–82.

18

[¶52] This reasoning is applicable here. "As the hearing examiner in medically contested cases, the Medical Commission is tasked with weighing the medical and other evidence *presented to it* by the parties. ***It is not tasked with providing the equivalent of an independent medical examination and opinion.***" *Decker*, ¶ 34, 124 P.3d at 697 (emphasis added); *see also McMasters v. State of Wyoming ex rel. Wyoming Workers' Safety & Comp. Div.*, 2012 WY 32, ¶ 77, 271 P.3d 422, 441 (Wyo. 2012) ("This Court has on prior occasions cautioned the Commission against these types of impromptu medical diagnoses and reminded the Commission of its obligation to make its decision on the basis of the records and testimony entered into evidence." (citing *Moss v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2010 WY 66, ¶ 30, 232 P.3d 1, 9 (Wyo. 2010); *In re Nagle*, 2008 WY 99, ¶ 17, 190 P.3d 159, 166–67 (Wyo. 2008); *Rodgers*, ¶ 41, 135 P.3d at 582)).

[¶53] While the Medical Panel, inappropriately, referred to matters which were not in evidence, our review must consider the entire record to determine if the Medical Panel's conclusion was arbitrary or capricious or not in accord with the law, taking "due account . . . of the rule of prejudicial error." Wyo. Stat. Ann. § 16-3-114(c). In other words, we ask, despite the erroneous insertion of its independent opinion, was there otherwise a rational basis for the Medical Panel's conclusions? We find there was.

[¶54] Following Dr. Kaplan's report, Ms. Reichenberg asked Dr. Shay to review Dr. Kaplan's evaluation and his own records to determine "if all the diagnosis and ratings were considered fairly." Dr. Shay increased Ms. Reichenberg's rating by 1% for her thoracic spine based on Ms. Reichenberg's report of pain, although he stated, "Per Dr. Kaplan and my own records, no neurological deficits documented." Dr. Shay assigned an increase of 7% for Ms. Reichenberg's right shoulder because of her earlier shoulder surgery.

[¶55] The Medical Panel fully explained the reasons it discounted Dr. Shay's opinion. The Medical Panel correctly noted Dr. Shay's recommendation for an increase in Ms. Reichenberg's thoracic impairment rating was based on Ms. Reichenberg's report of increased pain, but Dr. Shay agreed there were no neurological deficits documented.

[¶56] The Medical Panel declined to adopt an increased rating for Ms. Reichenberg's shoulder. The medical evidence from the surgery itself revealed negligible pathology necessitating the surgery. As a result, the Medical Panel found the surgery was incidental for purposes of determining her impairment rating. It noted the Sixth Edition of the *AMA Guides* required an impairment rating be based on the "diagnosis with the highest *causally-related* impairment rating." Therefore, Ms. Reichenberg's tissue damage and shoulder pain were not included in determining her impairment rating. The Medical Panel also rejected Dr. Shay's evaluation because the work-related injury connection was erroneously based on the Division's earlier decision to cover treatment for her shoulder. *Porter v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 69, ¶ 16, 396 P.3d 999, 1005 (Wyo. 2017) ("the rule that emerged from the cases may be summarized as: an

uncontested Division determination, either awarding or denying benefits, will not be given preclusive effect with respect to future determinations and objections").

[¶57]  Having reasonably rejected Dr. Shay's opinion, the Medical Panel did not err when it concluded Ms. Reichenberg did not carry her burden to show an entitlement to an increased impairment rating.

## *CONCLUSION*

[¶58]  Though the Medical Panel's decision was lacking in several respects, the ultimate determinations were supported by substantial evidence and were not arbitrary, capricious, or otherwise not in accordance with law.